**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0486, <u>State of New Hampshire v. Antonios N. Dimoulas</u>, the court on July 30, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(2).  Following a jury trial in the Superior Court (<u>Schulman</u>, J.), the defendant, Antonios N. Dimoulas, was convicted on multiple counts of stalking and violations of a protective order.  On appeal, he challenges the sufficiency of the evidence.  We affirm.

The record contains the following evidence.  The victim and the defendant lived together from 2007 until 2015.  The victim obtained an order of protection against the defendant on June 25, 2018.  The order prohibited the defendant from contacting the victim in any way.  It expired on June 24, 2019.  In June 2019, the circuit court extended the order of protection for one year.  In September 2019, the defendant texted and called the victim multiple times, and left her a voicemail.  In February 2020, the victim again received text messages from the defendant.  On each occasion, the victim went to the Concord Police Department to report the contact.  A Concord police officer then confirmed that a civil protective order was in effect and spoke to the defendant by telephone.

The defendant again texted the victim on April 2, April 3, and April 5, 2020.  On April 5, 2020, the victim texted the defendant: "You're not allowed to contact me per legal orders. Stop."  The defendant, however, responded to that message by text on April 5, and continued to text the victim on April 8, April 12, April 13, and April 14.  The victim reported the continued contact to the Concord Police Department on April 8, 2020 and April 14, 2020.  On both dates, a Concord police officer contacted the defendant after reviewing a copy of the protective order.  On April 8, Concord Officer Louk advised the defendant that there was "an active protective order" and that he had an open warrant. He responded that he would continue to get more warrants "because he would try to continuously try to reach out to his children."  The victim received additional text messages from the defendant after April 8.  She sent them to Louk who contacted the defendant again; the defendant stated that he did not care about the protective order and did not care about the warrants that had been issued in response to his continued violation of the order.

As a result of his multiple contacts with the victim, the defendant was indicted on 14 counts of class B felony stalking, see RSA 633:3-a, I(c) (2016) and 14 counts of the lesser-included offense of misdemeanor violation of a protective order, see RSA 173-B:9 (2022). Following a two-day jury trial, he was convicted on six stalking charges and ten violation of protective order charges. The trial court imposed concurrent 105-day stand committed sentences on the four violation of protective order convictions which were not lesser-included offenses of the felony stalking convictions, and suspended concurrent sentences on the six stalking convictions.

On appeal, the defendant does not dispute that he communicated with the victim on any of the cited dates. Rather, he argues that the charged offenses require that the State prove that the service provisions of the underlying statutes were satisfied. Specifically, he contends that the charged offenses required that the State prove that the 2019 order extending the initial protective order was "issued" and that "notice of it" was "provided," "pursuant to" or "under" RSA chapter 173-B. Accordingly, he contends, "the State had to prove that a 'written cop[y]' of the order extending the protective order was 'sent to [his] last address of record.'" See RSA 173-B:8, II (2022) (providing that orders, other than temporary orders, shall be sent to the defendant's last address of record). He further asserts that "[t]o the extent this issue is not preserved, it constitutes plain error." To accept his argument would require that we add language to the statutes that define the charged offenses that the legislature did not include. See State v. Zhukovskyy, 174 N.H. 430, 434 (2021) (when resolving issue of statutory construction, court will interpret legislative intent from statute as written and will not add language that legislature did not see fit to include).

To convict the defendant on the charged stalking offenses, the State was required to prove that the defendant "[a]fter being served, or otherwise provided notice of, a protective order pursuant to RSA 173-B, RSA 458:16, or paragraph III-a of this section, . . . purposely, knowingly, or recklessly engage[d] in a single act of conduct that both violates the provisions of the order and is listed in [RSA 633:3-a, II(a)]." RSA 633:3-a, I(c) (2016); see RSA 633:3-a, II(a)(7) (2016) (course of conduct includes any act of communication as defined in RSA 644:4, II). RSA 173-B:9, III addresses the State's burden when a defendant is charged with the violation of a protection order. It provides in relevant part: "A person shall be guilty of a class A misdemeanor if such person knowingly violates a protective order issued under this chapter." Neither of the charged offenses requires that a specific notice process be satisfied.

At the close of the evidence, the jury was instructed that the violation of a protective order charges had four elements: (1) the defendant was subject to a protective order issued by the circuit court under RSA 173-B:1; (2) the defendant was served, or otherwise provided notice of the protective order; (3) after receiving notice of the protective order, the defendant violated the order;

2

(4) the defendant acted knowingly with respect to the first three elements. The court further explained that to prove the defendant acted "knowingly," the State had to prove that he was "[a]ware the order was issued, aware the order remained in effect, aware he was violating it -- aware, aware, aware." The jury was then instructed that the stalking charges had five elements: (1) the defendant was subject to a protective order issued by a court under 173-B; (2) the protective order prohibited the defendant from having contact with another person: (3) the defendant was served or was otherwise provided notice of the protective order; (4) the defendant violated the protective order by communicating with the other person; and (5) the defendant acted knowingly with respect to the first four elements. At the close of the instructions, the trial court confirmed with counsel that they had no objection to its instructions.

As the trial court observed, the jury found the defendant not guilty of all charges based on his acts up to and including April 3 and guilty of all stalking and violation of protective order charges based on his actions beginning on April 5. Having reviewed the record before us, we affirm the defendant's convictions.

Affirmed.

MacDonald, C.J, and Bassett, Donovan, and Countway, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**